NORTH PENN TRANSFER,
INC., Plaintiff,

v.

The MAPLE PRESS COMPANY,
Defendant.

No. 4:CV–94–0178.

United States District Court,
M.D. Pennsylvania.

Jan. 12, 1995.

Ronald Amato, Schattenstein and Amato, Bethlehem, PA, for plaintiff.

David Schaumann, Blakey, Yost, Bupp & Schaumann, York, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff North Penn Transfer, Inc. (North Penn) filed this action pursuant to 49 U.S.C. §§ 10741 and 10762 to recover freight charges allegedly owed by the defendant, The Maple Press Company (Maple Press). North Penn is a freight carrier presently operating as a debtor in possession under Chapter 11 bankruptcy, administered before the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 92–10776F. It sues to recover on freight charges at the rate filed by it with the Interstate Commerce Commission (ICC).

North Penn alleges that during the period from February, 1989 through February, 1992, it transported 1,798 shipments for the defendant, but was not compensated at the rates published with the ICC, in violation of federal and state law. It contends that it is owed an additional $49,106.08[1] in freight hauling fees, plus pre-judgment and post-judgment interest at the legal rate.

Defendant asserts a counterclaim[2] for recoupment grounded in section 11705(b)(3)[3] of the Interstate Commerce Act (the act or ICA) against its alleged liability for charges at the published rate. Section 11705(b)(3) imposes liability on carriers who charge rates found to be unreasonably high—an issue decided by the ICC, not this court. Defendant asks that this action be stayed pending referral[4] of the unreasonable-rate issue to the ICC (record document no. 3, ¶ 16 and record document no. 18).

Before the court is a motion for summary judgment filed by the plaintiff (record document no. 5). The essential facts are not in dispute. The parties agree on the amounts previously invoiced and paid and on the amount of the ICC published rates. They disagree only on the application of the law to the facts. Defendant has filed a motion to stay these proceedings pending a decision by the ICC on a yet-to-be-filed administrative complaint.[5]

For the reasons which follow, we will grant plaintiff's motion in part. Judgment will be entered in favor of the plaintiff for the additional invoiced rates, but execution on the judgment will be barred pending further order of court to allow defendant an opportunity to challenge the reasonableness of the published rates before the ICC.

The court expressly determines, under Fed.R.Civ.P. 54(b), that there is no just reason for delay of entry of final judgment in favor of plaintiff on its complaint, and will direct entry of judgment upon receipt of plaintiff's calculation of pre-judgment inter-

---

1. This amount was reduced from the amount demanded in the *ad damnum* clause of plaintiff's complaint, $49,341.58, consistent with the affidavit from plaintiff's auditor, Charles E. Shinn, stating that this is the correct amount owed. (Record document no. 7, ¶ 11).

2. Record document no. 3.
   Defendant filed an amended answer and counterclaim on September 22, 1994 (record document no. 22), to which plaintiff filed a reply on October 4, 1994 (record document no. 23).

3. 49 U.S.C. § 11705(b)(3).

4. "Referral" is somewhat of a misnomer. There "is no direct mechanism through which the court can order a referral to the ICC." The most that this court can do in that regard is advise the defendant to file a petition promptly with the ICC raising the issue. *North Penn Transfer, Inc. v. Victaulic Company of America*, 859 F.Supp. 154, 165 (E.D.Pa.1994).

5. Record document no. 18.

est consistent with the remainder of this memorandum and the accompanying order.

## DISCUSSION

### Reiter v. Cooper

■ Both sides rely on the United States Supreme Court decision in *Reiter v. Cooper*, — U.S. —, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), but draw different conclusions from its holding. In *Reiter*, the Court recognized that the ICC statutory requirement that carriers' rates be "reasonable," 49 U.S.C. § 10701(a), "gives shippers an express cause of action against carriers for damages ... [or] reparations ..." *Id.* at —, 113 S.Ct. at 1217, 122 L.Ed.2d at 614. Section 11705(b)(3) provides, the Court held, a cause of action for unreasonable rates which may be asserted as a counterclaim against the carrier in a rate recovery case. Although section 11705(b)(3) claims are generally subject to a two-year statute of limitations running from the date of "delivery or tender of delivery by the carrier," section 11706(g), that limitation does not apply if such claims are asserted as counterclaims in response to the carrier's suit. *Id.* at —, 113 S.Ct. at 1218, 122 L.Ed.2d at 614–15. "Recoupment claims are generally not barred by a statute of limitations so long as the main action is timely." *Id.* at —, 113 S.Ct. at 1218, 122 L.Ed.2d at 615.

■ Because section 11705(b)(3) claims are counterclaims, not defenses,[6] the Court held, Rule 54(b) "permits a district court to enter separate final judgment on any claim or counterclaim, after making 'an express determination that there is no just reason for delay.'" *Id.* The power to enter judgment separately is, the Court further held, "largely discretionary" and "to be exercised in light of

'judicial administrative interests as well as the equities involved'..... giving due weight to 'the historic federal policy against piecemeal appeals,' ..." *Id.* The district court may, but is not required to, stay the collection proceeding until the ICC has ruled on the shipper's rate reasonableness challenge. *Id.* at —, 113 S.Ct. at 1219, 122 L.Ed.2d at 616–17.

The Supreme Court specifically disavowed a "pay first" rule, stating that payment of the tariff rate is not a "prerequisite to litigating the rate reasonableness issue." *Id.* at —, 113 S.Ct. at 1219, 122 L.Ed.2d at 617, relying upon 49 U.S.C. § 11706(g). Under this section, the court held, shippers can assert a section 11705(b)(3) claim before payment and any time after the accrual date (the date of tender or delivery by the carrier). *Id.*

■ The Court went on to state that under the doctrine of primary jurisdiction, courts may "enable" a referral to an administrative agency, "staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Id.* "Referral of the issue to the administrative agency does not deprive the court of jurisdiction," the Court made clear. *Id.* at —, 113 S.Ct. at 1220, 122 L.Ed.2d at 618. The court "has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Id.* If the issue is "referred" to the ICC, the latter determines only the question of the reasonableness of the filed rates; it does not grant reparations relief, since it lacks the authority to do so.[7] *Id.*

■ In determining whether to enter separate judgment, district courts are required to make the "express determination" re-

---

6. A defense cannot be adjudicated separately from the plaintiff's claim to which it applies. *Id.*

7. In *F.P. Corp. v. Ken Way Transportation, Inc.*, 821 F.Supp. 1032, 1038 (E.D.Pa.1993), the court explained:

Shippers must institute a claim or counterclaim in the courts, which would then "refer" the issue of rate reasonableness to the Commission. *Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparation,* 335 I.C.C. 403, 414 (1969). The ICC

continues to adhere to that view. *NITL—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* 3 I.C.C.2d 99, 106–07 (1986); *NITL—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* 5 I.C.C.2d 623, 625 (1989). The Supreme Court held this interpretation of the statute reasonable and therefore binding. *Reiter,* — U.S. at —, 113 S.Ct. at 1219–21. See also: *North Penn Transfer, Inc. v. Victaulic Company of America,* 859 F.Supp. 154, (E.D.Pa. 1994) (Shipper did not have to pay filed rate before raising unreasonable rate issue.)

quired under Fed.R.Civ.P. 54(b). *Id.* at ——, 113 S.Ct. at 1221, 122 L.Ed.2d at 619. The considerations which factor into that determination are, the Court held:

> In the ordinary case, where a carrier is solvent and has promptly initiated suit, the equities favor separate judgment on the principal claim; referral of the unreasonable-rate issue could produce substantial delay, and tariff rates not disapproved by the ICC are legal rates, binding on both the shipper and the carrier ... The equities change, however, when the suing carrier is in bankruptcy. Indeed, we have previously held that even a "threat of insolvency" of the party seeking separate judgment is a factor weighing against it.... Even so, we cannot say that insolvency is an absolute bar. Conceivably, a district court could determine that other equities favor separate judgment—for example, a threat that the shipper may become insolvent, which Rule 62(h) would allow a court to protect against by entering separate judgment for the carrier but staying enforcement on condition that the shipper deposit the amount of the judgment with the court.

*Id.* See also: *North Penn Transfer, Inc. v. Victaulic Company of America*, 859 F.Supp. 154, 162–63 (E.D.Pa.1994) (interpreting *Reiter, supra* ).

Not surprisingly, plaintiff argues that this matter should not be stayed pending an ICC ruling on the reasonableness of its published rates, and defendant argues in favor of a stay. See, e.g., *F.P. Corp. v. Ken Way Transportation, Inc.*, 821 F.Supp. 1032, 1039 (E.D.Pa.1993) (District court stayed the proceedings pending the decision of the ICC on defendant's previously-filed petition for declaratory relief challenging the reasonableness of the filed rates) and *Victaulic Company, supra* (Federal action stayed pending review by the ICC of whether carrier acted as common or contract carrier). In its mo-

tion to stay the proceedings filed June 24, 1994, defendant proposes to "file an administrative Complaint with the Interstate Commerce Commission seeking a determination of the reasonableness of the Plaintiff's filed tariffs within thirty (30) days of the date of the Court's Order staying the proceedings, or within such time as the Court directs." (Record document no. 18, ¶ 9).

Plaintiff is now in Chapter 11 bankruptcy, a factor which strongly counsels against granting judgment in its favor. *Id.* at 619. To guard against the possibility that defendant would be unable to recoup monies already paid out if it prevails before the ICC on its unreasonableness claim, we will bar plaintiff from executing on the judgment entered in this action, and grant defendant leave to file a motion to alter or amend the judgment within 30 days after any ICC ruling affirming its challenge to the reasonableness of plaintiff's published rates.

Although plaintiff argues that the published rates are also recoverable under Pennsylvania law, citing the fact that they are published with the Pennsylvania Public Utility Commission, as well as the ICC,[8] that fact does not justify allowing plaintiff to recover at the published rate immediately under state law. Any ruling to the contrary would undermine the Supreme Court's holding in *Reiter, supra*, by allowing an insolvent carrier to recover against a shipper whose right to challenge the rates before the ICC would be rendered a nullity if he could not recoup monies already paid out to the carrier.

Plaintiff contends that the defendant has not adduced evidence sufficient to justify "referral" of the reasonableness issue. "To justify referral to the ICC, the shipper must at least make a threshold showing that the filed rates are unreasonable." *F.P. Corp., supra*, 821 F.Supp. at 1038 and *In re Roberts Carrier Corp.*, 157 B.R. 109, 114 (M.D.Tenn. 1993) (listing cases). In *F.P. Corp., supra*,

---

**8.** Section 1303 of the Pennsylvania Public Utility Code provides in relevant part that:

> No public utility shall, directly or indirectly, by any device whatsoever ... demand or receive from any person, corporation ... a greater or less rate for any service rendered or to be rendered by such public utility than that speci-

fied in the tariffs of such public utility applicable thereto.... Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron.

Pa.Stat.Ann. tit. 66, § 1303.

the court looked to the ICC's Petitions for Issuance for guidance in deciding whether the shipper has met that evidentiary requirement, noting that the ICC stated in Petitions for Issuance that "[a]lthough there is no single fixed test which the Commission applies to rate reasonableness cases," some general criteria include "(a) relevant rate comparisons, (b) a carrier's proffer of a particular rate, (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place, (d) the class rates for like traffic, and (e) tariff analysis." *F.P. Corp., supra,* 821 F.Supp. at 1038–1039. See also: *In re Roberts, supra,* 157 B.R. at 114.

While it is true that defendants could have provided the court with more in the way of comparative data or other facts supporting their contention of unreasonableness, (See, e.g., *Horn's Motor Express v. Harrisburg Paper Co.,* 765 F.Supp. 211, 216–17 (M.D.Pa. 1991), the information supplied is minimally adequate to justify referral. (See: Record document no. 17, p. 6).

Although other courts have found referral unjustified on the ground of the ICC's long-standing backlog in resolving rate cases, and plaintiff advances that argument here,[9] we do not find that argument sufficiently compelling in this instance. Plaintiff is in Chapter 11, not Chapter 7, bankruptcy, so any delay occasioned by referral to the ICC is of lesser importance than might be true under other circumstances. Cf. *In re Roberts, supra,* 157 B.R. at 116 ("A court should 'refer[ ] a matter to the ICC when it believes that agency's rate determination will assist in resolving the entire dispute.' ... [R]eferral of the rate reasonableness issue to the ICC will not assist in resolving this dispute. The ICC has an impenetrable backlog of rate reasonableness cases, some of which have been pending before the agency for as many as eight years. The 'futility doctrine,' ... creates an exception to the normal exercise of primary jurisdiction here because referral of the rate reasonableness issue to the ICC cannot resolve the trustee's right to collect undercharges and will delay completion of administration of this bankruptcy for many years.")

9. See: Record document no. 6, pp. 8–12.

We also find that plaintiff is clearly entitled to pre-judgment interest. In *Consolidated Rail Corp. v. Certainteed Corp.,* 835 F.2d 474, 478 (3d Cir.1987), the Third Circuit Court of Appeals stated:

[D]enial of prejudgment interest ... clashes with congressional policy.... The Interstate Commerce Act, which aims to treat shippers uniformly and to foreclose opportunities for favoritism, implies full payment of tariff charges ... Waiver of prejudgment interest would confer on those who delay payment of the balance due an advantage over shippers who meet their obligations promptly. In effect undercharges would afford a delinquent shipper an interest-free loan from the carrier.

Although the court was ruling on recovery of pre-judgment interest by a rail carrier, not a trucking company, as is the case here, the same underlying considerations apply to justify grant of pre-judgment interest in this case as well.

The court determines that pre-judgment interest should be measured at a rate equal to the average yield of marketable securities of the United States Government having a duration of 90 days—90-day Treasury Bills. *Southern Pacific Transportation Co. v. City of San Antonio,* 748 F.2d 266, 274–75 (5th Cir.1984).

In this case, plaintiff is suing for a balance due on 1,798 freight bills (reduced from 1,802 sued upon in the complaint—see record document no. 7, p. 3). In the interest of simplicity, uniformity and practicality, the court holds that one interest rate should be applied to all invoices, and that rate shall be determined as of the date the first payment was due. That is the date when the carrier began to suffer harm and when pre-judgment interest began to accumulate. *Id.* at 275–76, n. 20. Even with a uniform rate, an interest calculation will have to be made separately for each of the 1,798 invoices.

The court will defer entry of judgment until there has been a recalculation of interest submitted by plaintiff on this basis.

Post-judgment interest is available as a matter of law, 28 U.S.C. § 1961, and will accrue as of the date of entry of judgment.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion for summary judgment filed by the plaintiff (record document no. 5) is granted to the extent of the relief provided in this order.

2. Judgment will be entered in favor of the plaintiff and against defendant in the amount of $49,106.08 [10] plus pre-judgment interest calculated in the manner stated in the accompanying memorandum.

4. Defendant's motion to stay these proceedings pending a decision by the Interstate Commerce Commission (ICC) on a yet-to-be-filed administrative complaint (record document no. 18) is granted to the extent of the relief provided in this order.

5. Plaintiff is directed to file and serve on or before January 31, 1995 a statement setting forth its proposed calculation of the principal amount due on the 1,798 invoices, together with a pre-judgment interest calculation on the same for a final judgment to be entered on February 13, 1995.

6. Defendant shall have until February 6, 1995 within which to file any objection to the foregoing statement.

7. The court will resolve any such objection and enter final judgment in favor of plaintiff on February 13, 1995, subject to the other terms and conditions of this order and the accompanying memorandum.

8. Execution on the judgment to be entered pursuant to paragraph 2 above will be stayed indefinitely under and pursuant to Fed.R.Civ.P. 62(h), pending further order of court, subject to the following:

a) Defendant has thirty days from the date of final judgment to initiate proceedings before the ICC challenging the reasonableness of the published rates upon which plaintiff sought to recover in this action. If no such proceedings are initiated within that time period, plaintiff may petition the court to lift the stay of execution on that ground.

b) If proceedings are initiated before the ICC, defendant is directed to provide this court with a report at four-month intervals indicating the status of the administrative proceedings.

c) Plaintiff is directed to notify this court of the issuance of a final decision by the ICC on defendant's rate challenge or of any other ICC ruling which, in plaintiff's view, justifies lifting the stay of execution. Defendant may also file such notification.

d) Whenever plaintiff is of the opinion that a decision by the ICC has been unreasonably delayed, plaintiff may file a motion to lift the stay of execution.

e) Whenever plaintiff is of the opinion that other good cause exists, plaintiff may file a motion to lift the stay of execution.

---

**10.** This amount was reduced from the amount demanded in the *ad damnum* clause of plaintiff's complaint, $49,341.58, consistent with the affida-

vit from plaintiff's auditor, Charles E. Shinn, stating that this is the correct amount owed. (Record document no. 7, ¶ 11).