## Suits to Use v. Aetna C. & S. Co., Appellant.

Argued March 22, 1932.

Before Trexler, P. J.,
Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld
and Parker, JJ.

*Thomas F. Mount,* and with him *Joseph W. Hender-son* of *Rawle & Henderson,* for appellant.

*Earle Hepburn,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1932:

The single question covered by the statement of the question involved upon this appeal is whether the trial judge erred in charging the jury that there was no evidence to support the defendant's contention that the legal plaintiff had entered into an accord and satisfaction with it.

A brief statement of some undisputed facts will define the relations of the parties and indicate the roots of the controversy.

By a written contract, dated September 1, 1923, the defendant surety company appointed the legal plaintiff, Frank C. Suits, a licensed insurance broker, (hereinafter referred to as the plaintiff although he assigned the claim in suit to the use plaintiff, Walter T. Sullivan, shortly before the writ issued) its ''office agent'' for Philadelphia and vicinity to solicit applications for bonds, etc., and agreed to pay him a commission of twenty-five per cent of the premiums upon surety bonds secured for it by him.

In November, 1924, one Charles C. Pace had the contract for the construction of an apartment house and was required to give a bond in the sum of $595,000 to insure its completion. Suits solicited from Pace the placing of this business with defendant.

The bond was executed on December 30, 1924, by defendant as surety for Pace; the premium to be paid by Pace was $8,925 and the twenty-five per cent commission provided for by the contract of 1923 was $2,-

231.25. Plaintiff's contract with defendant provided that he would be "responsible" to it for all premiums on bonds issued through his agency; defendant accordingly billed plaintiff on January 17, 1925, for the amount of the premium, less the commission, or a net of $6,693.75. The bond was delivered to Pace and plaintiff billed him for the full amount of the premium.

Defendant received payment in full for the net premium due it, but the only portion of the commission ever received by plaintiff was the sum of $215.62 which came to him in the form of a check from Pace. It was admitted in the affidavit of defense that Pace, "on behalf of the defendant" paid out and distributed the balance of the commission of $2,231.25 as follows: H. E. Anderson, $1,115.62 and Joseph F. McManus, $900.

To plaintiff's suit for the balance of the twenty-five per cent commission defendant interposed two defenses: First, that the plaintiff did not secure the bond for the defendant; and second, that there had been an accord and satisfaction for the said sum of $215.62.

The trial judge submitted the case to the jury on the issue whether or not Pace had given the order for the bond through the plaintiff, but instructed them that there was not sufficient evidence to sustain an accord and satisfaction. A verdict was rendered for the plaintiff in the full amount of his claim, and motions for a new trial and for judgment n. o. v. were dismissed by the court below. In this appeal by the defendant it does not challenge the finding of the jury that plaintiff secured the business for it, but urges that, under all the evidence, it was the duty of the trial judge to submit the question of accord and satisfaction to the jury.

Plaintiff's testimony was substantially as follows: He had known Pace for fifteen or sixteen years, and had secured several bonds for him. When the question

of this particular bond came up, he asked him if he would not give the business to the defendant company, and in this connection saw Pace nearly every other day during the months of October and November, 1924. Pace finally arranged with defendant to become his surety on the bond through the solicitation of plaintiff; it was prepared by a Mr. Hager, in charge of the bonding department of defendant.

In May, plaintiff received in the mails the check for $215.62 from Pace without comment from him, but from conversations with him learned that this was to be his share of the commission and understood the balance of the premium had been paid to defendant. He immediately took the matter up with Remington, the manager of the local office. The latter drafted a letter for him to send, to the home office, under date of May 4, 1925, stating he had been defrauded out of some $2,200 in commissions, that he had learned that the commission was to be split between Hager, a third party and himself, and expressing indignation at the procedure. An official from the home office then came to Philadelphia and a conference was held. It was then established that Hager received no part of the commission, but that of the remaining amount, $900 was paid, as above stated, to Joseph McManus, and the balance, $1,115.62, to H. E. Anderson, the third party referred to in the letter. The defendant company claimed, according to plaintiff, that it owed him nothing, and that if he felt he had not received enough he would have to secure it from Pace. On May 29th plaintiff wrote a letter to the company retracting his charges against Hager. This letter he stated was also written in the first instance by Remington. It reads: "I am glad the matter of commission on the above bond has been straightened out, and am also glad to advise that I do not believe any of it was paid to Mr. Hager. I am, therefore, hereby retracting the statements made

in my letter of May 4th. Assuring you of my appreciation of your personal interest and prompt and courteous adjustment of this matter, with kind regards, I am yours very truly, Frank C. Suits.''

On cross-examination plaintiff stated he had paid no attention to the details of the bond, but that these were handled by Hager. He definitely stated that he had entered into no arrangement for splitting the commission. He was then shown a letter of May 14th written to the vice-president of the defendant, before the matter had been settled, in which he said among other things: ''I can well understand why Mr. Anderson connected with the bank in Royersford, Pa., should participate in the commission on this bond because he influenced the bank to buy some of the bonds. I understand he was to get 10%. What I cannot understand is what became of the difference between what I got and the balance of 25% on this bond premium.'' Plaintiff explained that he had no objection to Anderson's receiving a part of the premium, provided it did not come out of his share, and that Remington had also drafted this letter for him. In explanation of the letter of May 29th, he stated that the words ''straightened out'' referred only to Hager's participation in the commission. He admitted that he had not cashed the check received from Pace until May 26th. He also admitted that while he had left the company's employ in 1927, he had made no demand on them for the amount in issue until suit was actually started in 1929, and had in fact paid the company a debt of $1,500 at the time he left its employ, without attempting a set-off. On re-direct examination he testified that Remington had told him that defendant had only received 75% of the premium and did not owe him anything, and that if he wished to collect he should see Pace. He added that it was not until the affidavit of defense was filed in 1930 that he learned Pace had paid the bal-

ance to the other parties at the instance of the defendant.

For plaintiff, Pace testified that he had paid the stated amounts to Anderson and McManus under instructions of Hager, the head of defendant's bonding department, and that neither of these individuals had anything to do with the solicitation for the bond.

Pace was also called as a witness for defendant, testifying that Hager was the individual who got him to sign the application for the bond, that plaintiff was present at the negotiations, and that the bond was delivered to him by Hager. Hager's testimony was that Pace got in touch with him by telephone to secure the bond, and that he (Hager) had investigated Pace's financial standing and had issued the bond and given Pace instructions as to how to draw the various checks covering the premium. He added that the premium was charged directly to the plaintiff because the latter was the office agent, and because this was the usual procedure where the premium was to be split. Remington was not available as a witness, but his testimony given at a former trial was read by counsel. The material parts were that he was the manager of defendant's office in Philadelphia, that he did not compose the letters for plaintiff to send to the home office, but had only removed certain offensive passages and that he had learned only in court that Hager had told Pace to distribute the premium in the way in which it was actually done. Plaintiff was called in rebuttal to contradict Hager's testimony, and testified that he had drawn thirteen bonds for Pace over a period of years, in addition to quite a few other bonds; that he knew of no case where the premium was billed to him on a bond, the commission of which was to be split; and that in fact he had never encountered a split commission in his experience as a broker.

Defendant's contention upon this appeal is that even

if plaintiff procured this business and was entitled to a commission he was quite satisfied with the share which he actually received; that his sole complaint was that he thought Hager was receiving part of the commission, and that when the subsequent investigation proved the remainder of the commission went, not to Hager but to other individuals, he raised no further objection. In this connection, defendant points to plaintiff's letter of May 14th and contends that plaintiff conceded that Anderson was entitled to a portion of the commission; that in his letter of May 29th he stated he was glad the question of the commission had been straightened out, and that there had been a "prompt and courteous adjustment" of the matter; and that he made no further demand for the payment of any balance until the institution of the present suit, but on the contrary had repaid the company an amount due it when he left its employ, without deducting the sum here in dispute.

It may be quite true that some of the expressions in plaintiff's letters and his subsequent conduct in not insisting on payment might, at first glance, be interpreted as indicating that he had accepted the situation; but the trouble with defendant's proposition is that when its contention and evidence are analyzed we do not, in our opinion, find therein the essential elements of an accord and satisfaction—a claim in dispute between the parties and an agreement, based upon a consideration, to pay, on the one hand, and to accept, on the other, less than the amount claimed.

What was the situation when plaintiff accepted and cashed the check for $215.62; what consideration passed to him for so doing; what dispute was there between him and defendant; or what evidence was there of any meeting of minds between him and defendant that it would pay and he would accept $215.62 instead of the full twenty-five per cent commission?

Prima facie, plaintiff was entitled, under his contract, to a commission of $2,231.25. The defendant company never notified him that it intended to pay him less. On the contrary, its bill to him for the premium indicated that he was to get from Pace $8,925 and retain $2,231.25 as his commission. Pace never notified plaintiff, or any other person, that he did not intend to pay the full premium. After billing plaintiff for the premium, the defendant, without his knowledge or consent, authorized and directed Pace to pay designated portions of the commission to Anderson and McManus, persons unknown to him, and the remainder to plaintiff.

Defendant was attempting to set up an accord and satisfaction against one with whom it had entered into a written contract for the payment of a fixed commission; the burden was on it to establish every element of this defense. Its pleadings and evidence show, to say the least, an utter lack of frankness in its dealings with plaintiff in this transaction. To establish an accord and satisfaction, it must not only be shown that the party against whom it is raised was satisfied with the transaction, but it must further be established that he received some consideration which would compensate him in law for accepting a less amount. This consideration is usually found in the fact that at the outset there is a dispute as to the actual amount due, and the agreement of both parties upon an amount arrived at by compromise forms the consideration for the settlement. "Where a claim is unliquidated and in dispute, and less than the amount claimed is given and accepted in full satisfaction thereof, the concession made by one of the parties is a good consideration for the concession made by the other, or, as otherwise expressed, the fact of the uncertainty of the claim, or an honest difference as to what is due on an unliquidated demand, furnishes the consideration": 1 C. J. 553. But

one cannot be said to have conceded a claim or contention that he did not know was being advanced. The defendant company merely established to plaintiff's satisfaction that its own official, Hager, had received no part of the commission, and then informed him that it had received only 75% of the premium, and that if he was not satisfied with the amount of his check, he should sue Pace. In other words, the attitude assumed by the company was not that there was any dispute about its own obligation, but that the obligation, if it existed, was that of a third party. Neither plaintiff nor, in fact, the manager of defendant's local office, knew until after suit was instituted that Pace had paid out the commission as he did upon instructions from an official of the defendant. Plaintiff received no consideration so far as defendant was concerned, since its own declared position was that the dispute lay between plaintiff and Pace. To effect an accord and satisfaction it is necessary that the minds of the parties should have met on the matters involved: "An accord and satisfaction cannot arise by reason of the payment of less than is due, unless it clearly appears not only that this was the intention of the payor, but also that the payee expressly agreed to it, or was bound to know of the intention at the time of acceptance": Lovekin et al. v. Fairbanks, Morse & Co., 282 Pa. 100.

The record contains nothing to indicate that plaintiff knew, when he cashed the check, that he was receiving it at the direction of the defendant, or that the company claimed it represented the only amount due him. Indeed, if we accept defendant's own interpretation, any dispute that existed was over Hager's participation in the commission, and it is obvious that the check was not paid in that particular connection, especially because Hager was shown to have received no part of the commission. Nor did the check contain

any notation to the effect that it was in full payment of plaintiff's commission.

Plaintiff was not a party to the negotiations for the division of the commission; his rights under his contract with the company seem to have been entirely ignored by its responsible officials and we think his subsequent ambiguous declarations and acts did not constitute such evidence of an accord and satisfaction as entitled the defendant to have that issue submitted to the jury.

Judgment affirmed.