F.P. CORP., Plaintiff,

v.

KEN WAY TRANSPORTATION, INC.,
R.M. Palmer Company, and M.
Polaner, Inc., Defendants.

Civ. A. No. 91–5125.

United States District Court,
E.D. Pennsylvania.

March 15, 1994.

John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, DC, for plaintiff.

Charles C. Thebaud, Jr., Paul H. Lamboley, Newman & Holtzinger, P.C., Washington, DC, for Ken Way Transp., Inc.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

### I. BACKGROUND

F.P. Corp. ("Plaintiff") commenced this action pursuant to the Interstate Commerce Act, 49 U.S.C.A. § 10101 et seq. ("ICA"), against Defendants Ken Way Transportation, Inc. ("Ken Way"), R.M. Palmer Company ("Palmer"), and M. Polaner, Inc. ("Polaner") to recover undercharges for freight shipments Plaintiff made between May 1988 and June 1990.

On May 24, 1988, Plaintiff, a motor common carrier and a motor contract carrier, entered into a contract carrier agreement with Ken Way, a licensed transportation broker, for the benefit of Ken Way's shipper customers, Palmer and Polaner. Between May 1988 and June 1990, in accordance with the agreement, Ken Way tendered goods to Plaintiff for transportation. Plaintiff billed, and Ken Way paid, the price agreed upon at the time of shipment. These prices were below the common carrier rates contained in the tariff that the ICA requires carriers to "publish and file" with the ICC. 49 U.S.C.A. § 10762. Plaintiff contends that, under the

filed rate doctrine, it is entitled to the higher filed tariff rate because it acted as a motor common carrier when it transported the freight tendered by Ken Way.

On July 20, 1992, Ken Way filed a petition with the Interstate Commerce Commission ("ICC") requesting a declaration that Plaintiff's shipments constituted contract carriage or, in the alternative, that the tariff rates Plaintiff seeks to collect are unreasonable or inapplicable.

By Order dated April 8, 1993, this Court stayed the present action and referred to the ICC determination of the nature of the carriage and reasonableness of rates. The ICC determined that Plaintiff's transportation services constituted contract carriage and, therefore, Plaintiff was not entitled to recover for undercharges[1]. Based on the ICC decision, Defendants have filed a motion for summary judgment on Plaintiff's complaint.[2] For the reasons stated below, the Court grants Defendants' motion.

## II. DISCUSSION

### A. Summary Judgment Standard

 Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court's role is to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Josey v. John R. Hollingworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Further, the evidence must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). However, if the non-moving party fails to adduce sufficient evidence in connection with an essential element of the case for which it has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. Filed Rate Doctrine

Under the filed rate doctrine, a motor carrier may not charge or receive compensation different from that specified in the tariff rate filed with the ICC. 49 U.S.C.A. § 10761(a). The Supreme Court has strictly construed the doctrine and shippers are deemed to have constructive notice of the applicable filed rate. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126–28, 130, 110 S.Ct. 2759, 2766, 2768, 111 L.Ed.2d 94 (1990). In the past, the filed rate doctrine applied to both contract and common carriers. *Covey v. ConAgra, Inc.*, 788 F.Supp. 1160, 1162 (D.Colo.1992). However, through exercise of its statutory authority[3], the ICC has exempted motor contract carriers from the filed rate doctrine. *Id.; Atlantis Express v. Standard Transp. Serv.*, 955 F.2d 529, 533 (8th Cir.1992); *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n v. United States*, 757 F.2d 301 (D.C.Cir.), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). Accordingly, the threshold question in determining Plaintiff's right to undercharges is whether Plaintiff acted as a motor common carrier or motor contract carrier when it transported the freight tendered by Defendants. If plaintiff acted as a motor contract carrier it

---

1. *Ken Way Transportation, Inc.—Petition for Declaratory Order,* Case No. NOM–40840 (July 1, 1993). Having decided this threshold issue, the ICC found it unnecessary to rule on Ken Way's other arguments. *Id.*

2. Defendants have filed a counterclaim, asserting an action for misrepresentation, and have petitioned for leave to file an amended counterclaim, asserting further actions for breach of contract, tortious interference with business relations and abuse of process. This memorandum does not consider the merits of the counterclaim and proposed amended counterclaim.

3. Under the ICA "[t]he Commission may grant relief from [the filed tariff requirements] to contract carriers when relief is consistent with the public interest and the transportation policy...." 49 U.S.C.A. § 10761(b).

# 1184

may not maintain this action. *Atlantis Express,* 955 F.2d at 533.

## C. Nature of Carriage

■ The Motor Carrier Act defines "motor contract carrier" as:

a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C.A. § 10102(15)(B). Applying this definition to the present case, Plaintiff's status depends upon the existence of two elements: (1) a "continuing agreement" which (2) meets the "distinct needs" of the shipper. *Covey v. ConAgra, Inc.,* 788 F.Supp. at 1162; *Dan Barclay, Inc. v. Stewart & Stevenson Serv., Inc.,* 761 F.Supp. 194, 200 (D.Mass. 1991).

■ To fulfill the "distinct needs" requirement, a party must show a need "for a different or a more select or a more specialized service" than a common carrier can provide. *ICC v. J–T Transp. Co.,* 368 U.S. 81, 91, 82 S.Ct. 204, 210–11, 7 L.Ed.2d 147 (1961). Services may be considered more specialized to the extent that they differ "in quality, in priority, in control by the shipper, or in some other significant respect, from the service a common carrier holds out to the public at large." *Dan Barclay,* 761 F.Supp. at 200 (*quoting Dixie Midwest Express, Inc., Extension—General Commodities,* 132 M.C.C. 794 (1982)).

■ The "continuing agreement" requirement refers to bilateral contracts involving repeated transactions. *Dan Barclay,* 761 F.Supp. at 202. The ICC also defined the "continuing agreement" requirement by regulation. 49 C.F.R. § 1053.1 [4]; *Dan Barclay,*

761 F.Supp. at 200. The ICC has repealed section 1053. *Contracts for Transp. of Property,* Ex Parte No. MC–198, 8 I.C.C.2d 520 (1992). In repealing the regulation, the ICC replaced the "technical" standards of section 1053 with a "totality of the circumstances" test. *Contracts for Transp.,* 8 I.C.C.2d at 529. However, repeal was not retroactive. *Ken Way Transp., Inc.—Petition for Declaratory Order* at n. 4. Accordingly, section 1053.1 governs the relation between the parties in the present action. *See, e.g., F.P. Corp. v. Golden West Foods, Inc.,* 807 F.Supp. 1228, 1230 (W.D.Va.1992).

■ In *General Mills, Inc.—Petition for Declaratory Order,* 8 I.C.C.2d 313 (1992), the ICC considered the application of section 1053.1. The ICC found that contract carriage existed based upon only "substantial compliance" with the requirements of section 1053.1. 8 I.C.C.2d at 323. The ICC stated that it would not "find a lack of contract carriage based upon simple, technical oversights or omissions." *Id.; see also Contracts for Transp. of Property,* Ex Parte No. MC–198 (not printed) (March 5, 1991). The ICC further stated:

We will not look with favor upon contract carriers or their successors-in-interest contending in undercharge proceedings that a carrier's failure to fulfill obligations under the contract and permit transforms the transportation services intended by the parties to be contract carriage into common carriage subject to unintended filed common carrier tariff rates.

8 I.C.C.2d at 321. Courts normally defer substantially to an agency's interpretation of its own regulations. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977); *Dan Barclay,* 761 F.Supp. at 201 n. 6.

It is against this background that the Court considers Defendants' motion for summary judgment and Plaintiff's request for review of the ICC decision.

---

**4.** Prior to its repeal, section 1053.1 provided: No contract carrier by motor vehicle as defined in 49 U.S.C. § 10012(15) shall transport property for hire ... except under special and individual contracts or agreements which shall be in writing, shall provide for transportation

for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments....

#### D. *Review of the ICC Decision*

■ The doctrine of "primary jurisdiction" requires a court to suspend its process and refer a matter to an administrative body "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [that] administrative body." *United States v. Western Pacific R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The ICC is the administrative agency charged with expert skill and knowledge within the interstate transportation industry. *Id.* "Congress wanted the [ICC] to answer questions of this sort; and to permit courts to answer these questions independently would threaten the nationwide uniformity of rate that the [ICA] sought." *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101, 104 (1st Cir.1990), *modified in part*, 1990 U.S. App. LEXIS 13339 (1st Cir.).

By Order dated April 18, 1993, the Court stayed this action and referred to the ICC, under the doctrine of "primary jurisdiction", determination of the nature of the carriage and reasonableness of rate. Plaintiff now asks the Court to set aside the ICC decision as "arbitrary and capricious." 5 U.S.C. § 706(2)(A). 28 U.S.C.A. § 1336(b) provides that "the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend in whole or in part, any order of the Interstate Commerce Commission arising out of such referral." Under 28 U.S.C.A. § 1336(c), request for review must be filed within 90 days from the date the ICC order becomes final.

■ In the present case, the ICC order was served on July 1, 1993. Plaintiff did not request review until October 25, 1993 when it filed its opposition to Defendants' motion for summary judgment. The Court has no authority to extend the statutory time limit. *Burlington Northern, Inc. v. Northwestern Steel & Wire Co.*, 794 F.2d 1242, 1247 (7th Cir.1986); *Atchison, Topeka and Santa Fe Railway Co. v. Trailer Train, Inc.*, 455 F.Supp. 520, 523 (N.D.Ill.1978); *Locust Cartage Co. v. Transamerican Freight Lines, Inc.*, 430 F.2d 334, 341 (1st Cir.) *cert. denied* 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970). Plaintiff has cited no authority to support its request that the Court ignore the plain language of § 1336(c) and review the ICC decision.

■ If the aggrieved party fails to challenge the ICC decision within the statutory period, the ICC decision becomes final and binding upon the referring court. *Atchison, Topeka and Santa Fe Railway Co.*, 455 F.Supp. at 523; *Locust Cartage Co.*, 430 F.2d at 341. If an ICC decision survives review, the referring court must abide by the decision when it decides remaining issues before it. *Delta Traffic Service, Inc.*, 902 F.2d at 104.

■ Moreover, this Court finds that the ICC decision would survive review under 5 U.S.C. § 706(2). A reviewing court may set aside an agency decision found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 41, 103 S.Ct. 2856, 2865, 77 L.Ed.2d 443 (1983); *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *Beazer East, Inc. v. United States Envtl. Protection Agency, Region III*, 963 F.2d 603, 606 (3rd Cir.1992); *Consolidated Rail Corp. v. United States*, 619 F.2d 988, 993 (3rd Cir.1980).

■ The Court is not bound by ICC decisions based upon misinterpretation of the ICA. *Consolidated Rail Corp.*, 619 F.2d at 993. However, the scope of review is narrow and the Court may not substitute its judgment for that of the ICC. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. at 2866–67. The Court must consider whether the agency decision was based on consideration of relevant factors and whether there has been a clear error of judgment. *Id.; Bowman Transp., Inc.*, 419 U.S. at 285, 95 S.Ct. at 441–42; *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir. 1985). "Normally, an agency rule would be arbitrary and capricious if the agency has relied upon factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem,

offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could be ascribed to a different view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2867. Finally, a decision may be arbitrary if it departs from precedent without principled reason therefore. *Donovan,* 766 F.2d at 807.

In the present case the ICC considered factors relevant to both the "distinct needs" and "continuing agreement" requirements. In particular, the ICC stated:

> The contract, moreover, is clearly a bilateral agreement in writing providing for transportation by a carrier, F.P., for a particular broker, Ken Way. It imposed obligations on both parties. Ken Way agreed to use F.P.'s transportation services under its contract carrier authority, tender a minimum volume of freight, and make timely payments. Ken Way maintains that F.P. conducted its operations so as to meet the distinct needs of its customers. F.P. agreed: (1) to assume full value cargo liability for all loss or damage to goods being shipped; (2) to provide cargo insurance; (3) not to solicit Ken Way's brokerage customers; and (4) to binding arbitration procedures for contract disputes.... And while the contract does not reference an exact number of shipments to be tendered, the evidence shows that petitioner tendered at least 126 shipments to F.P. after the parties signed the contract.

*Ken Way Transp., Inc.—Petition for Declaratory Order* at 3–4. The ICC further cited appropriate precedent.[5]

### III. *CONCLUSION*

In light of the ICC decision in *Ken Way Transp., Inc.—Petition for Declaratory Order,* and the ICC's primary jurisdiction over the nature of carriage, the Court grants summary judgment in favor of Defendant.

---

5. Among authority cited by the ICC were: *General Mills, Inc.—Petition for Declaratory Order,* 8 I.C.C.2d 313 (1992); *Contracts for Transp. of Property,* 8 I.C.C.2d 520 (1992); *Zoneskip, Inc. v. UPS, Inc. and UPS of America, Inc.,* 8 I.C.C.2d 645 (1992). Subsequent ICC decisions are also consistent with the ICC's findings. *See, e.g., Ford Motor Co. v. Security Serv., Inc.,* 9 I.C.C.2d 892 (1993); *Eaton Corporation—Petition for Declaratory Order—Certain Rates and Practices of Transcon Lines,* Case No. NOM–40945 (served November 1, 1993).