**NORTH PENN TRANSFER, INC., Plaintiff,**

v.

**ATD–AMERICAN CO., Defendant.**

**Civ. A. No. 94–867.**

United States District Court, E.D. Pennsylvania.

Nov. 16, 1994.

Ronald Amato, Schattenstein and Amato, Allentown, PA, for plaintiff.

Charles L. Howard, Gollatz, Griffin, Ewing & McCarthy, Philadelphia, PA, for defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff North Penn Transfer, Inc. brought this action against defendant ATD–American Co. in order to collect the difference between (1) the freight charges actually charged by plaintiff to defendant and (2) the freight charges specified by the tariffs of plaintiff that were on file with the Interstate Commerce Commission ("ICC") and/or were consistent with applicable intrastate law provisions. Currently before me are the motion of plaintiff to strike, the motion of defendant for summary judgment, and the motion of plaintiff for summary judgment. (Document Nos. 6, 10, 11). For the following reasons, the motion of defendant for summary judgment will be granted.

## I. FACTUAL BACKGROUND

The following facts are not in dispute.

Plaintiff transported numerous shipments of freight on behalf of defendant in both interstate and intrastate commerce from 1989 to 1991. Plaintiff invoiced defendant for those shipments, and defendant paid those invoices in full. On February 10, 1992, plaintiff filed a Chapter 11 bankruptcy petition. Plaintiff alleges that subsequent to filing its bankruptcy petition an audit of its freight bill invoices revealed that the freight charges previously invoiced and paid by defendant were less than the freight charges required by the tariffs of plaintiff on file with the ICC and/or consistent with applicable intrastate law provisions. In the instant action, plaintiff seeks to obtain from defendant the difference between these two sets of freight charges.

## II. DISCUSSION

### A. *Standard for Summary Judgment*

Under Fed.R.Civ.P. 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990).

### B. *Negotiated Rates Act of 1993*

In support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment, defendant argues that it is exempt from plaintiff's undercharge claim. To support this argument, defendant points to the provision of the Negotiated Rates Act of 1993 ("NRA") which protects small businesses from undercharge claims. *See* Pub.L. No. 103–180, sec. 2(a), § f(9), 107 Stat. 2044, 2046 (1993) (codified at 49 U.S.C. § 10701(f)(9)). Plaintiff counters that the NRA does not apply to motor carriers such as itself who are Chapter 11 debtors and therefore under the jurisdiction of a United States Bankruptcy Court. To support its counter argument, plaintiff points to the "Limitation on Statutory Construction" provision of the NRA and to section 541 of the U.S.Bankruptcy Code. *See* Pub.L. No. 103–180, sec. 9, 107 Stat. 2044, 2053; 11 U.S.C. § 541.

When a motor common carrier charges customers less than the tariffs on file with the ICC for that carrier, that carrier generally has a right to collect from those same customers the amount that was undercharged. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). Concerned about the growing number of these collection cases, which are generally brought by a receiver or trustee for a bankrupt motor carrier, Congress enacted the NRA in order to provide a statutory process for resolving these cases. H.R.Rep. No. 359, 103d Cong.,

1st Sess. 7–8, U.S.Code Cong. & Admin.News 1993, 2534, 2535. Included among the provisions of the NRA is an exemption for small businesses from these undercharge claims: "a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—(A) if such person qualifies as a small business concern under the Small Business Act (15 U.S.C. § 631 *et seq.*)." Pub.L. No. 103–180, sec. 2(a), § (f)(9), 107 Stat. 2044, 2046 (codified at 49 U.S.C. § 10701(f)(9)). Also included among the provisions of the NRA is a section titled "limitation on statutory construction" which provides in relevant part that: "[n]othing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy." Sec. 9, 107 Stat. at 2053.

Plaintiff argues that this latter section of the NRA, combined with section 541 of Title 11 of the United States Code ("Bankruptcy Code"), makes the NRA inapplicable to it as a debtor under Chapter 11 of the Bankruptcy Code. Section 541(c)(1) provides:

Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the [debtor's bankruptcy] estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an

option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). Plaintiff alleges (1) that the NRA is an applicable nonbankruptcy law, (2) that the NRA's application is triggered by the financial condition of the motor carrier, and (3) that the NRA effects its interest in property, that is the freight undercharge claims at issue here.

■  An examination of the NRA reveals, however, a fatal flaw in plaintiff's argument. It is true that under the portion of the NRA that added subsection (f) to 49 U.S.C. § 10701 certain conditions must be met by a person who wants to elect to satisfy an undercharge claim by paying a certain percentage of it as detailed in paragraphs two, three and four of subsection (f):

[T]he person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—

(A) the carrier or freight forwarder is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection....

Sec. 2(a), § (f)(1)(A), 107 Stat. at 2044 (codified at 49 U.S.C. § 10701(f)(1)). However, while the language of the NRA clearly makes the availability of paragraphs two, three and four of subsection (f) subject to this condition, there is nothing in this language that would indicate that this condition also applies to the availability of paragraph nine, the paragraph that contains the small business exemption. Indeed, paragraph nine states that "[n]otwithstanding paragraphs (2), (3), and (4), a person from whom the additional legal applicable and effective tariff rate charges are sought shall not be liable...." Sec. 2(a), § (f)(9), 107 Stat. at 2046.[1]

---

1. An earlier draft version of the proposed NRA made the small business exemption explicitly subject to the conditions listed in paragraph one, but this language was apparently removed before the NRA became law. In the Senate Report on the NRA, the "Changes in Existing Law" section includes the paragraph containing the small business exemption; in that paragraph, the exemption is made available only "when a claim is made by a carrier or forwarder described in paragraph (1)(A) of this subsection." *See* S.Rep. No. 79, 103d Cong., 1st Sess. (1993). In the NRA as enacted, however, the paragraph containing the small business exemption lacks any reference to paragraph one or the conditions contained therein. *See* Pub.L. No. 103–180, sec. 2(a), § (f)(9), 107 Stat. 2044, 2046 (codified at 49 U.S.C. § 10701(f)(9)).

In other cases where a bankrupt carrier has attempted to apply this condition to the small business exemption, federal courts have generally rejected that application. *See, e.g., De'Medici v. FDSI Management Group (In re Lifschultz Fast Freight Corp.),* 174 B.R. 271 (N.D.Ill.1994); *Adrian Waldera Trucking, Inc. v. Quality Liquid Feeds, Inc.,* 848 F.Supp. 853 (W.D.Wis.1994); *Hoarty·v. Midwest Carriers Corp. (In re Best Refrigerated Express, Inc.),* 168 B.R. 978, 984–85 (Bankr.D.Neb.1994). *But see Jones Truck Lines, Inc. v. IXL Mfg. Co. (In re Jones Truck Lines, Inc.),* 172 B.R. 602 (Bankr. W.D.Ark.1994) (apparently assuming without discussion that the "no longer transporting property" condition applies to the NRA's small business exemption). Therefore, even if section 541 of the Bankruptcy Code applies to portions of the NRA, it does not apply to the small business exemption because the small business exemption is available regardless of the financial state of the carrier bringing the undercharge claim. *See North Penn Transfer, Inc. v. Polykote Corp.,* 170 B.R. 565, 567–68 (E.D.Pa.1994); *Cooper v. E.I. Du Pont de Nemours & Co. (In re Bulldog Trucking, Inc.),* 173 B.R. 517, 535 n. 12 (1994) ("[c]ertain provisions of the NRA apply uniformly to all motor carriers of property, and the [bankrupt motor carrier's] Trustee does not contend that 11 U.S.C. § 541(c)(1) makes those non-discriminatory provisions unenforceable).

Given that the small business exemption of the NRA applies even when a carrier who is bankrupt brings an undercharge claim, I find that defendant ATD–American Co. is entitled to the exemption. Defendant has submitted an affidavit of its Executive Vice President and Treasurer in which he states that the activities of defendant fall under Standard Industrial Classification ("SIC") number 2392 and that during all relevant periods defendant did not have more than 154 employees. Zaslow Aff. These statements have not been contested by plaintiff. Regulations promulgated under the Small Business Act provide that a business that is classified under SIC number 2392 is a "small business concern" if it has less than 500 employees.[2] *See* 15 U.S.C. § 632(a); 13 C.F.R. § 121.601. Given these facts, I find that defendant is a small business concern under the Small Business Act and so is subject to the small business exemption provided under the NRA. Therefore, summary judgment will be granted for defendant and against plaintiff on plaintiff's federal law undercharge claim.

### C. *State Law Claim*

In one of its responses to the motion of defendant for summary judgment, plaintiff has asserted that a number of the shipments at issue were intrastate shipments not subject to the NRA and the ICC but instead subject to the Pennsylvania Public Utility Commission. *See* 49 U.S.C. § 10521 (restricting the ICC's jurisdiction over motor carrier transportation to interstate travel). While plaintiff did not explicitly put forward a state undercharge claim, by making this assertion it did imply that such a claim exists. To the degree that a state undercharge claim exists outside of the ICC's jurisdiction, this Court does not have jurisdiction over that claim under either 28 U.S.C. § 1331 or 28 U.S.C. § 1337, the jurisdictional grounds originally asserted by plaintiff. In addition, plaintiff has made no claim that diversity jurisdiction exists over that state claim. Therefore, I will assume that the only basis for this Court having jurisdiction over the state undercharge claim would be supplemental jurisdiction under 28 U.S.C. § 1367.

Since I have granted summary judgment against plaintiff on its federal undercharge claim, the only claim over which this Court had original jurisdiction, I have the option of declining to exercise supplemental jurisdiction over the state undercharge claim. *See* 28 U.S.C. § 1367(c)(3). When all claims over which a district court has original jurisdiction have been dismissed, the court should consider a number of factors in deciding whether to exercise supplemental jurisdiction, including judicial economy, convenience and fairness to

---

**2.** 13 C.F.R. § 121.407(a) states that "number of employees" includes employees of domestic and foreign affiliates, but the affidavit of defendant's executive vice president and treasurer states that defendant was not affiliated with any other company or business during all relevant periods. Zaslow Aff. Plaintiff does not contest this statement.

**172**

the litigants, the stage of the litigation, whether either party will be prejudiced by the dismissal of the state law claims, and whether the state law claims involve issues of federal policy. *Glaziers & Glassworkers Local 252 Annuity Fund v. Newbridge Sec., Inc.*, 823 F.Supp. 1191, 1197 (E.D.Pa.1993).

The initial complaint in this case was filed only nine months ago, on February 8th. In addition, no federal policies are implicated by the possible state undercharge claim since it would only apply to shipments that fell outside of the jurisdiction of the ICC. Finally, since Pennsylvania law provides that matters dismissed by a federal court for lack of jurisdiction may be refiled in the state courts without regard to the limitations period, my dismissal of the state claims will not prevent plaintiff from bringing the same claims in state court. 42 Pa.Cons.Stat.Ann. § 5103(b)(1); *see Fulkerson v. City of Lancaster*, 801 F.Supp. 1476, 1486 n. 3 (E.D.Pa. 1992), *aff'd without op.*, 993 F.2d 876 (3d Cir.1993). Therefore, I decline to exercise supplemental jurisdiction over the state undercharge claim of plaintiff.

### III. CONCLUSION

For the foregoing reasons, the motion of defendant for summary judgment will be granted and the motion of plaintiff for summary judgment will be denied. In addition, the state undercharge claim of plaintiff will be dismissed without prejudice, and the motion of plaintiff to strike will be denied as that motion is now moot.

An appropriate Order follows.